[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Joan Goldenberg, claims that as a result of the negligence of defendant, Super Stop and Shop Supermarket Company ("Stop and Shop"), she slipped and fell and injured her back.
 FACTS
The court makes the following findings of fact by a preponderance of the evidence. On September 10, 1998, at approximately 6:00 p.m., Goldenberg slipped and fell after reaching for a watermelon and turning to her daughter to tell her that they were going to leave the store. As she fell, Goldenberg toppled into a display containing bottles of "veggie spray" and knocked over some of the bottles.
There were no mats on the floor in the area that the plaintiff slipped CT Page 15319 even though the vegetable and fruit section usually has mats. Goldenberg did not see anything on the floor before she fell and there were no warning signs. One of Stop and Shop's employees was working in the area at the time of the accident.
After Goldenberg fell, she immediately felt a wet slippery liquid underneath her. Her daughter saw a large puddle of a dirty liquid. Neither Goldenberg nor her daughter saw any liquid pouring out of any of the veggie squirt bottles that were on the floor. When Goldenberg got up from the floor within thirty seconds to a minute her pants were soaked. The incident report filled out by the store admits that there was spilled veggie wash on the floor and that the floor was wet. Based on the foregoing facts, the court finds that the liquid was on the floor before Goldenberg fell and that it was the cause of her fall.
The regular sweeping schedule called for the area where Goldenberg fell to be swept at 6:00 p.m. On this particular evening no one swept the area from 5:18 p.m. until 6:30 p.m.
Goldenberg went to the hospital on September 10, 1998, complaining of back pain. The x-rays showed no broken bones and some arthritic spine changes that were not attributable to the accident. Goldenberg was charged $100.65 for the x-rays. The hospital prescribed medication that cost $25.23. Goldenberg missed three days of work and one additional appointment which equaled $130.00 in lost wages. A week after the accident, Goldenberg went to Dr. Jonathan Holder, an orthopedist, complaining of an injury to her upper back. He billed her $130.00 for this visit. This was not the first time she had seen Dr. Holder regarding back pain. A year earlier, on September 17, 1998, she complained to Dr. Holder about back pain and he found swelling in her trapezoidal muscle. She was still treating with Dr. Holder in August 1998.
Goldenberg started treating with a chiropractor, Dr. Michael LaMonica on September 29, 1998. Goldenberg subsequently slipped and fell January 18, 1999 and January 27, 1999 and reported these incidents to Dr. LaMonica. On February 15, 1999, Dr. LaMonica found that Goldenberg had reached maximum medical improvement and released her from his care. Dr. LaMonica billed Goldenberg $2,700.00 for his services.
In December of 2000, Goldenberg started physical therapy for the first time for back pain. Between February of 1999, when she stopped treatment with Dr. LaMonica and December 2000, when she started her physical therapy, Goldenberg continued to teach aerobics classes. She also was pregnant and delivered a child in May of 2000. The court does not find that the physical therapy treatment that the plaintiff received was necessitated by the accident that occurred at Stop and Shop. CT Page 15320
Goldenberg's experts Dr. Holder and Dr. LaMonica gave her a permanent partial disability rating of thirty percent and five percent respectively. Dr. Holder's finding is not credible given that he also found that she has absolutely no restricted motion or neurological changes. The defendant's expert testified that at most he only attributed one percent of her disability to her fall at Stop and Shop. In reaching this conclusion he testified credibly and persuasively that preexisting injuries, two subsequent falls and her pregnancy also contributed to a five percent disability. Based on the evidence presented the court finds that only one percent of Goldenberg's disability is attributable to her fall. Goldenberg's life expectancy is thirty-three years.
 DISCUSSION
Goldenberg was a business invitee when she went on the Stop and Shop premises. "The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of land to enter the land or remain on the land. Although an invitation itself does not establish the status of an invitee, it is essential to it. "Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee." Kurti v.Becker, 54 Conn. App. 335, 338 (1999). An invitation is implied when a person goes upon the land of another for their mutual benefit. "A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possessor of land." Kurti v. Becker, 54 Conn. App. 335, 338 (1999). Plaintiff went to the premises for a purpose connected with business dealings and to purchase items which resulted in a mutual benefit to the parties. Accordingly, the court finds that the plaintiff was a business invitee upon the premises.
"In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e. trespasser, licensee or invitee. possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . (citations omitted)". Kurti v. Becker, supra at 338.
Goldenberg has proven that the defendant failed to reasonably inspect and maintain the premises in order to render them reasonably safe and failed to warn the plaintiff of dangers that she could not reasonably be expected to discover. There were no mats on the floor and no warning CT Page 15321 signs. Goldenberg would not reasonably be expected to see a liquid on the floor. Finally Stop and Shop did not adhere to its own policy in sweeping the floor in the area where Goldenberg fell.
For the plaintiff to recover from the defendant for breach of duty, she has to prove defendant "knew of the unsafe condition, or was chargeable with notice of it, because had it exercised a reasonable inspection of the premises, it would have known of the condition." White v. E FConstruction Co., 151 Conn. 110, 113 (1963).
The court finds that at a minimum Stop and Shop had constructive notice of the unsafe condition. The liquid that Goldenberg slipped on was dirty. The store's own records provided that a cleaning of the area at issue should have been done at 6:00 p.m. The store failed to do this until 6:30 p.m. If defendant had exercised a reasonable inspection at 6:00, like its own procedures provided for, Goldenberg would not have fallen. Finally, there was a Stop and Shop employee in the immediate area prior to Goldenberg's fall.
Defendant has failed to prove by a preponderance of the evidence that plaintiff was comparatively negligent. The plaintiff was not aware of the defective condition which was a liquid that plaintiff would not have observed in the ordinary course.
The economic damages attributable to the accident are $3085.88 which includes Dr. LaMonica's bills, the x-ray bill, lost wages and the cost of medication. The non-economic damages for pain and suffering and permanency attributable to the accident are $500. The court enters judgment in the amount of $3585.88.
 CHASE T. ROGERS SUPERIOR COURT JUDGE